BRYANT, Judge.
Where the findings of fact support the trial court's conclusion that defendant is solely responsible and is in arrears for tax debts accrued in 2009, 2010, and 2011, we affirm the trial court's order of contempt. However, where the basis for the trial court's findings of fact as to the amountof the tax debt accrued is not clear from the record, we remand in part for further proceedings.
On 26 March 2010, plaintiff Margaret V. Snoke filed suit against her husband defendant Phillip J. Snoke raising issues of child custody, child support, post-separation support, alimony, and equitable distribution. Plaintiff contended that during the course of their marriage, plaintiff and defendant acquired substantial marital and divisible assets, including real and personal property. Plaintiff also requested that the trial court award her attorneys' fees as she was an interested party acting in good faith who had insufficient means to defray the expense of the suit. Defendant answered plaintiff's complaint and counterclaimed on the issues of equitable distribution and child custody. Plaintiff replied to defendant's counterclaim.
On 26 April 2011, the trial court entered a Consent Order for Interim Distribution of Marital Residence and Annuity ("the April Order"). In the April Order, the court found that the parties owned real property located at 608 Surrey Path Trial, Winston-Salem, North Carolina. The property-the parties' marital residence-was encumbered by a lien held by the U.S. Treasury Department. The parties agreed to liquidate a non-qualified annuity, apply $50,000.00 of the proceeds towards the tax lien on the marital residence, and then sell the marital home. The parties also agreed that the $50,000.00 was to be applied to taxes and penalties assessed and included as part of the lien for the tax years 2008 and earlier, because "[defendant was] liable for all taxes and penalties assessed and included as part of the lien for the tax years 2009 and later."
On 25 August 2011, with the consent of plaintiff and defendant, the trial court entered a Consent Order titled "Repayment of Tax Lien" ("the August Order"). The findings of fact indicate that the parties' marital residence was under contract and scheduled to close on Friday, 12 August 2011,[1] but "[i]t [was] anticipated that all gross proceeds from the sale of the marital residence [would] not completely satisfy the debts listed on [the April order] ." The trial court ordered the following:
[Defendant] is responsible for reimbursing [plaintiff] for any and all sale proceeds that are applied to liens which have been placed on the marital residence as a result of [defendant's] failure to pay his taxes or liens created due to [defendant's] sole tax deficiencies and liabilities for the years 2009, 2010, and 2011 including principal, interests and penalties.
To reimburse plaintiff, defendant was ordered to pay $1,200.00 per month until such time as defendant's court-ordered child support obligation was satisfied. Thereafter, the monthly repayment amount due plaintiff would increase.
On 18 January 2012, plaintiff filed a Motion for Order to Appear and Show Cause. Plaintiff alleged that defendant failed to make monthly payments as ordered and requested that the trial court require defendant to appear and show cause as to why he should not be held in willful contempt, and further requested that the trial court award plaintiff attorneys' fees. A hearing was held on 6 February 2012 before the Honorable Chester Davis, Judge presiding. On 15 February 2012, Judge Davis entered an order finding defendant in contempt of court.
In its February 2012 contempt order, the trial court made the following findings of fact:
3. The marital residence was encumbered by ... a lien held by the U.S. Department of Treasury in the amount of $92,248.64 (hereinafter referred to as "the tax lien.")
...
11. ... Defendant is responsible for reimbursing plaintiff for tax refunds due to Plaintiff for her overpayment of her individual taxes in the years 2009, 2010 and 2011, which were not received by Plaintiff, but instead, applied to the tax lien.
12. Based upon undisputed evidence presented at the hearing, the portion of the IRS lien on the marital residence which is attributable to the 2009 tax year totals $56,034.84. Per the April and August Orders, Defendant is solely responsible for the entire debt. He is also entitled to a credit towards this debt in the amount of $14,709.73 for [a] payment he made at closing on the marital residence. Therefore, Defendant owes Plaintiff $41,325.11 for the 2009 tax lien placed on the marital residence.
The trial court ordered that upon termination of defendant's child support obligation, the monthly payment due to plaintiff would increase to $2,306.00 per month. As to plaintiff's motion for contempt, the court found that defendant had failed to make monthly payments to reimburse plaintiff as per the April and August orders, that defendant had the ability to pay and, thus, the court held defendant in civil contempt. Defendant thereafter purged himself of contempt by paying $13,265.73, which included the arrears from defendant's missed payments.
On 14 April 2014, plaintiff filed a second motion for contempt for failure to comply with the April and August 2011 Orders. In her motion plaintiff alleged that defendant was ordered "to pay $2306 each month to Plaintiff until such time that the 2009, 2010 and 2011 tax deficiencies and liabilities (including principal, interest and penalties) totaling $74,802.66 are reimbursed in full." Plaintiff acknowledged that although defendant had made past payments totaling $45,847.77, at the time the motion was filed, defendant was in arrears in the amount of $16,938.97 ($15,684.23 plus $1,254.74 interest) pursuant to the court-ordered payment plan. There is no indication in the record that defendant ever responded in writing to plaintiff's motion for contempt or contested the allegations contained therein.
A hearing on plaintiff's motion for contempt was held in Forsyth County District Court, the Honorable Victoria Roemer, Judge presiding; on 17 July 2014, an Order of Contempt was entered against defendant. In the Order of Contempt, Judge Roemer found that, pursuant to the April Order, "[d]efendant was liable for all taxes and penalties assessed and included as part of the lien for the tax years 2009 and later." The court noted that pursuant to the April Order, on 20 May 2011, defendant mailed a $50,000.00 check to the Internal Revenue Service (IRS) to be applied to the parties' 2008, 2006, and 2005 tax debt, and thereafter the court found that "these debts for 2008, 2006, and 2005 ... were paid in full by the $50,000.00." The court also found that the $50,000.00 was not used to satisfy debts attributable to any other year and, therefore, "the tax lien stated on the HUD statement included years 2004, 2009, and 2010."
The trial court determined the amount defendant owed plaintiff following payment of the $92,248.00 tax lien on the marital residence. Because plaintiff shared the responsibility for the 2004 tax debt in the amount of $2,736.25, the remaining tax deficiencies and liabilities accrued in 2009 and 2010 (which were defendant's sole responsibility), were calculated to be $89,512.39. Defendant had paid $14,709.73 at the closing of the sale of the marital home, which payment, when credited against the $89,512.39 obligation, reduced defendant's outstanding debt to $74,802.66. The court also found that defendant had made payments to plaintiff from October 2011 through October 2013 in the amount of $45,847.77, which reduced defendant's outstanding debt to $28,954.89 plus 8% interest.
After finding that defendant had willfully refused to make any payments from November 2013 through June 2014, the trial court determined that defendant was in arrears for $21,919.70 ($20,296.00 plus $1,623.70 interest). As "[d]efendant ha[d] the requisite means and ability and is able to comply with [the court's August Order and April Order]," the trial court concluded that defendant was in civil contempt of court and ordered that "[d]efendant may purge himself of contempt by paying the amount of $21,919.70[.]" The trial court further awarded plaintiff attorneys' fees in the amount of $3,378.00. Defendant appeals.
_________________________
On appeal, defendant argues the trial court erred by: (I) finding defendant in civil contempt; (II) awarding plaintiff attorneys' fees; and (III) violating defendant's due process rights.
Standard of review
Our standard of review of an order for contempt is limited to determining whether there is competent evidence to support the findings of fact, and whether those findings support the conclusions of law. Watson v. Watson,187 N.C.App. 55, 64, 652 S.E.2d 310, 317 (2007). Findings of fact made by the judge in a contempt proceeding are conclusive on appeal when supported by any competent evidence, and are reviewed for the sole purpose of passing upon their sufficiency to warrant the judgment. Id.
I
Defendant first argues that the trial court erred in its Order of Contempt. Specifically, defendant contends his debt to his wife has been satisfied. Defendant's argument is based mainly on his assertion that there is no evidence that any amount of the $92,248.64 tax lien encumbering the marital residence at the time of its sale accrued in 2010 or 2011. We disagree.
Defendant entered into consent agreements with plaintiff in April and August 2011. Each agreement was accepted by the trial court and entered into the record as a consent order. In the August Order, the trial court stated the following:
[defendant] is responsible for reimbursing [plaintiff] for any and all sale proceeds [from the sale of the marital residence] that are applied to liens which were placed on the marital residence as a result of [defendant's] failure to pay his taxes or liens created due to [defendant's] sole tax deficiencies and liabilities for the years 2009, 2010, and 2011....
The $92,248.64 lien held by the U.S. Treasury Department was satisfied by funds generated from the sale of the marital residence.
Defendant, by his consent in the April and August 2011 Orders, acknowledged responsibility for any 2010 and 2011 tax liabilities and deficiencies. While the orders do not state an amount for tax liabilities or deficiencies accruing in either 2010 or 2011, defendant's acknowledgment of the existence of tax liabilities and deficiencies in 2010 and 2011 in the consent orders approved by the parties is sufficient to support the trial court's findings of fact on this issue. Further, in the 15 February 2012 contempt order entered by Judge Davis, the court found that "the lien [was] created due to defendant's sole tax deficiencies and liabilities for the years 2009, 2010 and 2011 ... and that Defendant is also responsible for reimbursing plaintiff for tax refunds due to Plaintiff for her overpayment of her individual taxes in the years 2009, 2010 and 2011, which were not received by Plaintiff, but instead applied to the tax lien." Defendant did not appeal from nor otherwise challenge any findings of fact or conclusions of law in Judge Davis' order of contempt. As a result we can, and indeed do, take judicial notice of the findings of fact and conclusions of law in that order. See State v. McGee,66 N.C.App. 369, 370, 311 S.E.2d 383, 384 (1984) ("It is generally accepted that a court will notice earlier proceedings in the same cause.... In addition, certain documentary evidence is admissible without authentication if it is inherently reliable. Furthermore, G.S. 8-34 provides that copies of ... documents, recorded or filed as records in any court" can be considered as competent evidence." (citations and quotations omitted)); see also West v. G.D. Reddick, Inc.,302 N.C. 201, 203, 274 S.E.2d 221, 223 (1981) ("[G]enerally a judge or a court may take judicial notice of a fact which is either so notoriously true as not to be the subject of reasonable dispute or is capable of demonstration by readily accessible sources of indisputable accuracy. The device of judicial notice is available to an appellate court, and is employed not only in the course of a trial but also on any occasion where the existence of a particular fact is important, as in determining the sufficiency of a pleading...." (citations and quotations omitted)). Therefore, where, as here, defendant has entered into prior consent orders which state that he was solely liable for tax deficiencies and liabilities in 2009, 2010, and 2011 and where the 15 February 2012 order of contempt also found defendant to be solely liable for years 2009, 2010, and 2011, defendant's challenge to the trial court's 17 July 2014 order of contempt holding him liable for tax liabilities or deficiencies incurred in 2009, 2010, and 2011 is overruled.
However, we must acknowledge that while "[d]efendant was liable for all taxes and penalties assessed and included as part of the lien for tax years 2009 and later[,]" the evidence of record is inconsistent as to the years of accrual and the actual amounts of the tax liabilities which comprise the $92,248.64 lien. The trial court made a definitive finding (for which there is support in the record) that "the tax lien [ ] included years 2004, 2009 and 2010." Further, evidence of record supported a finding that the debts for 2005, 2006, and 2008 were paid in full as indicated in a letter from defendant's attorney enclosing a $50,000.00 check that the parties agreed would go toward taxes owed for 2005, 2006, and 2008.
In the 2014 Order of Contempt, the court found that the tax debt attributable to the year 2004 in the amount of $2,736.25 was the shared responsibility of plaintiff and defendant. This reduced the amount for which defendant could be solely responsible from $92,248.64 to $89,512.39. Thus, "[t]he remaining tax deficiencies and liabilities for the years 2009 and 2010 ... for which Defendant is solely responsible ... totaled $89,512.39."
At closing, defendant paid $14,709.73 to satisfy outstanding liens and mortgages on the property not satisfied by proceeds from the sale of the house. After crediting the $14,709.73 to defendant, defendant's obligation to plaintiff was further reduced to $74,802.66. The trial court also credited payments to plaintiff totaling $45,847.77 and found that defendant's outstanding debt to plaintiff was $28,954.89 plus 8% interest, but that defendant's arrears for purposes of contempt was in the amount of $21,919.70.
On appeal, defendant argues that, according to the record evidence in support of plaintiff's motion for contempt, the $92,248.64 tax lien on the marital residence was comprised of $2,736 .25 (a tax lien accrued in 2004), $33,477.55 (a tax lien accrued in 2006), and $56,034.84 (a tax lien accrued in 2009). As to defendant's contention that $33,477.55 of the tax lien was accrued in 2006, the trial court made the following finding of fact:
Counsel for Defendant argued that this amount was attributable to the 2006 tax year. However, such argument was not supported by credible testimony. Defendant failed to personally attend the hearing and he failed to subpoena the testimony of the IRS caseworker. Moreover, the IRS entry which defendant relied upon was questionable based upon the fact [ ] plaintiff continues to receive tax notices for unpaid 2004 taxes in spite of the fact that this 2004 debt was previously paid in full at the time that the marital residence closed.
Again, defendant's argument centers around a lack of evidence in the record to establish that the lien on the marital residence included amounts attributable to tax years 2010 and beyond (2011). However, as stated earlier herein, the evidence of record is sufficient to support the trial court's finding of fact and in turn its conclusion that the $92,248.64 tax lien against the marital residence (less $2,736.25 for a tax liability accrued in 2004) was attributable solely to defendant's tax deficiencies and liabilities accrued in 2009 and 2010.
There is no disagreement as to the trial court's findings of fact that the tax lien balance of $92,248.64 at the time of the sale of the marital residence, excluding $2,736.25 (for a tax debt both parties accrued in 2004), included $56,034.84 (for a tax debt defendant admittedly accrued in 2009), and excluded certain payments and credits due defendant. Further, we have held that there was sufficient evidence to support the trial court's finding that some of the balance defendant still owed plaintiff was attributable to tax debts that accrued in 2010 and perhaps 2011. However, we are unable to determine from the record, the amountof tax liability for 2010 and 2011. Therefore, we remand this matter to the trial court solely for the purpose of taking evidence as to the amount of tax liability and/or deficiency attributable to defendant for 2010 and 2011.
II
Next, defendant argues that the trial court erred in awarding attorneys' fees to plaintiff. We disagree.
"[T]his Court has ... upheld the awarding of attorney's fees under the court's broad contempt powers to enforce equitable distribution awards where attorney's fees were not expressly authorized by statute." Gen. Motors Acceptance Corp. v. Wright,154 N.C.App. 672, 678, 573 S.E.2d 226, 229-30 (2002) (affirming the trial court's award of attorneys' fees where "[a]ppellee essentially contends that the debt was ... a marital debt that [a]ppellant promised to pay ... [and] is therefore analogous to an equitable distribution award, which permits an award of attorney's fees through the court's contempt powers"); see also Middleton v. Middleton,159 N.C.App. 224, 227, 583 S.E.2d 48, 49-50 (2003) ("Plaintiff sought to recover attorney fees incurred while enforcing the consent judgment which settled the issue of equitable distribution between the parties. This Court has held that the contempt power of the district court includes the authority to award attorney fees as a condition of purging contempt for failure to comply with an order.").
In the present case, plaintiff and defendant married on 23 February 1991, separated on 21 August 2009, and divorced on 27 June 2011. Pursuant to the August 2011 order-a consent order-defendant "[was] responsible for reimbursing [plaintiff] for any and all sale proceeds [from the sale of the marital residence] that are applied to liens which have been placed on the marital residence as a result of [defendant's] failure to pay his taxes ... for tax years 2009, 2010, and 2011...." Thus, plaintiff and defendant assigned a marital debt and separate debt to defendant as would be assigned for purposes of equitable distribution. As discussed in Issue I,defendant failed to repay plaintiff in compliance with the August 2011 order for tax liabilities accrued in 2010 and/or 2011. The trial court found that defendant's noncompliance with the August 2011 order was willful and without legal justification or excuse; defendant had the requisite means and was able to comply with this Order; and plaintiff was an interested party acting in good faith. The court ordered that defendant "defray the expenses that Plaintiff incurred in her attempts to compel Defendant's compliance with the [c]ourt orders, including by not limited to attorneys' fees." Therefore, the trial court awarded plaintiff the attorneys' fees plaintiff incurred enforcing the August Order against defendant. See Gen. Motors Acceptance Corp.,154 N.C.App. at 679, 573 S.E.2d at 230 ("Under these facts, we hold there is no recognizable distinction between a court awarding attorney's fees through contempt proceedings when a spouse fails to honor a marital debt arising out of an equitable distribution award and when a spouse fails to specifically perform payment of a marital debt arising out of a consent judgment. Thus, having concluded the award was otherwise supported by proper findings of fact, the trial court did have the authority to award attorney's fees as a condition of purging contempt due to Appellant's failure to comply with the consent judgment."). Accordingly, we hold that by awarding plaintiff attorney's fees the trial court acted within its discretion and overrule defendant's argument.
III
In defendant's last argument, he contends the trial court violated his rights under the due process clause of the Fourteenth Amendment to the United States Constitution. More specifically, defendant contends he did not receive notice of the entry of the court's 17 July 2014 Order for contempt until 31 July 2014, thereby compressing the time for him to comply with the court's order and enter notice of appeal by two weeks. However, despite this compression of time, defendant still filed timely notice of appeal. As such, defendant's contention is without merit.
AFFIRMED IN PART; REMANDED IN PART.
Chief Judge McGEE and Judge STEELMAN concur.
Report per Rule 30(e).
Judge STEELMAN concurred in this opinion prior to 30 June 2015.
Opinion
Appeal by defendant from order entered 17 July 2014 by Judge Victoria Roemer in Forsyth County District Court. Heard in the Court of Appeals 16 February 2015.

There is no explanation in the record as to why the Order filed 25 August 2011 regarding a hearing which began 22 August 2011 refers to a 'future' closing date of 12 August 2011.